2025-1337

# United States Court of Appeals

### For the Federal Circuit

◆◆

ILDICO INC.,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

**On Appeal from the United States Court of International Trade
in Case No. 18-00136, Judge Jane A. Restani**

## DEFENDANT-APPELLEE'S BRIEF

BRETT A. SHUMATE
  *Assistant Attorney General*
PATRICIA M. MCCARTHY
  *Director*
JUSTIN R. MILLER
  *Attorney-In-Charge*
  *International Trade Field Office*
MARCELLA POWELL
  *Senior Trial Counsel*
MATHIAS RABINOVITCH
  *Trial Attorney*
U.S. DEPT. OF JUSTICE
CIVIL DIVISION
COMMERCIAL LITIGATION BRANCH
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-1873

*Counsel for Defendant-Appellee*

*Of Counsel:*
  FARIHA KABIR
  *Office of Assistant Chief Counsel*
  *U.S. Customs and Border*
  *Protection*

Dated: June 13, 2025

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

STATEMENT OF THE ISSUE ............................................................................... 2

STATEMENT OF THE CASE ................................................................................ 2

    A. The Merchandise at Issue.................................................................... 3

    B. The Trial Court's Decision ................................................................. 4

SUMMARY OF THE ARGUMENT........................................................................ 6

ARGUMENT ............................................................................................................. 8

I.    STANDARD OF REVIEW AND TARIFF CLASSIFICATION
      PRINCIPLES........................................................................................... 8

II.   THE TRIAL COURT CORRECTLY HELD THAT THE IMPORTED
      WRIST WATCHES ARE NOT CLASSIFIABLE IN HEADING 9101,
      HTSUS, BECAUSE THEY DO NOT HAVE "CASES" WHOLLY
      "OF PRECIOUS METAL"................................................................... 10

    A. The HTSUS Headings, and Legal Notes Exclusively Govern the
       Classification of the Imported Wrist Watches................................ 10

    B. The Imported Wrist Watches Do Not Have "Cases" Wholly "Of Precious
       Metal" ............................................................................................ 15

III.  IDILCO'S ARGUEMNTS ARE WITHOUT MERIT ................................ 17

    A. Additional U.S. Note 1(b)'s Definitions of The Term "Cases" Is Not
       Limited to Clock Cases................................................................... 17

    B. The Explanatory Notes Do Not Establish that A Wrist watch "Case"
       Excludes the Synthetic Sapphire Case Backs on the Subject Watches.......... 20

    C. The Synthetic Sapphire Case Back Is Part of a Wrist Watch Case ............... 24

D. The Classification of the Individual Components Of The Watches Is Immaterial Because The Watches Are Classifiable In Their Condition As Imported As Fully Assembled Goods ........................................................ 27

IV.    THE WATCHES AT ISSUE ARE PROPERLY CLASSIFIABLE IN HEADING 9102, HTSUS .................................................................................. 29

CONCLUSION ............................................................................................................ 29

# TABLE OF AUTHORITIES

## Cases

*Airflow Tech., Inc. v. United States,*
524 F.3d 1287 (Fed. Cir. 2008) ........................................................... 20

*Avenues in Leather, Inc. v. United States,*
423 F.3d 1326 (Fed. Cir. 2005) ........................................................... 9

*BASF Corp. v. United States,*
482 F.3d 1324 (Fed. Cir. 2007) ........................................................... 9

*Carl Zeiss, Inc. v. United States,*
195 F.3d 1375 (Fed. Cir. 1999) ........................................................... 11

*Ciba Vision Corp. v. United States,*
36 Ct. Int'l Trade 1256 (2012) ........................................................... 10

*Connecticut Nat'l Bank v. Germain,*
503 U.S. 249 (1992) ........................................................... 19

*Deckers Outdoor Corp. v. United States,*
714 F.3d 1363 (Fed. Cir. 2013) ........................................................... 11, 19

*Del Monte Corp. v. United States,*
730 F.3d 1352 (Fed. Cir. 2013) ........................................................... 19

*Ford Motor Co. v. United States,*
926 F.3d 741 (Fed. Cir. 2019) ........................................................... 25

*Home Depot U.S.A., Inc. v. United States,*
491 F.3d 1334 (Fed. Cir. 2007) ........................................................... 10

*Idilco Inc. v. United States,*
Slip. Op. 24-00123 (Nov. 1, 2024) ........................................................... 4

*LF USA, Inc. v. United States, as amended* (Jan. 22, 2018)
290 F. Supp. 3d 1339 (Ct. Int'l Trade 2017) ........................................................... 19

*Mil-Veterans Advoc. V. Sec'y of Veterans Affs.,*
7 F.4th 1110 (Fed. Cir. 2021)............................................................20

*Mita Copystar America v. United States,*
21 F.3d 1079 (Fed. Cir. 1994) ...........................................................10

*Russell Stadelman & Co. v. United States,*
242 F.3d 1044 (Fed. Cir. 2001) .........................................................11

*Sigma-Tau HealthScience, Inc. v. United States,*
838 F.3d 1271 (Fed. Cir. 2016) ...........................................................8

*Telebrands Corp. v. United States,*
865 F. Supp. 2d 1277 (2012)
*aff'd,* 522 Fed. Appx. 915 (Fed. Cir. 2013) ........................................9

*United States v. Citroen,*
223 U.S. 407 (1912) ...........................................................................25

*Victoria's Secret Direct, LLC v. United States,*
769 F.3d 1102 (Fed. Cir. 2014) ...........................................................8

*Witex, U.S.A., Inc. v. United States,*
28 Ct. Int'l Trade 1907 (2004)...........................................................11

## Harmonized Tariff Schedule of The United States

General Rules of Interpretation 1 (GRI 1)............................ 9, 10, 22

General Rules of Interpretation 6 (GRI 6)....................................... 9

## Chapter 70

Heading 7015 .............................................................................25, 27

## Chapter 71

Note 4(a).............................................................................................13

Note 5 .................................................................................................13

## Chapter 73

Heading 7318 ...................................................................................................... 28

**Chapter 91**

Heading 9101 ............................................................................................... *passim*

Subheading 9101.21.50 ................................................................................... 2, 3

Subheading 9101.29.90 ........................................................................................ 3

Explanatory Note 91.01 ...................................................................................... 27

Heading 9102 ............................................................................................... *passim*

Subheading 9102.21.70 ........................................................................................ 2

Explanatory Note 91.02 ...................................................................................... 27

Heading 9111 ............................................................................................... *passim*

Explanatory Note to heading 9111 .............................................................. *passim*

Heading 9112 .................................................................................. 21, 18, 21, 22

Explanatory Note to heading 9112 ................................................................ 21, 24

Additional U.S. Note 1(a) .......................................................................... 12, 24, 27

Additional U.S. Note 1(b)............................................................................. *passim*

Additional U.S. Note 2 .......................................................................... 2, 3, 14, 28

Explanatory Note to Chapter 91 .......................................................................... 21

General Note 3(h)(v)(A) ................................................................................ 13, 14

**Other Authorities**

*Seventeenth-Century European Watches*, Metropolitan Museum of Art,
https://www.metmuseum.org/essays/seventeenth-century-european-watches ..........1

Wrist Watches, *Merriam-Webster Dictionary*,
https://www.merriam-webster.com/dictionary/wristwatch.........................................15

Case Back, *Watch Components,*
https://www.crownwatchblog.com/glossary/watch-components/C ........................16

Exhibition Case Back, *Monochrome Watch Glossary,*
https://monochrome-watches.com/glossary/exhibition-case-back/..........................16

Display Back, *Watch Dictionary,*
https://www.tic-tock.com/watch-dictionary?.................................................................16

*Classification and Marketing of Watches and Clocks,*
CBP Informed Compliance Publication, (Feb. 2012).....................................................22

Lugs*, Horopedia*,
https://horopedia.org/lugs/ ................................................................................................23

Domes*, Dictionary of Horology,*
https://dictionary.fhs.swiss/?l=en.....................................................................................24

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for Appellee makes the following statements:

(1)     There are no other appeals arising from the decision of the United States Court of International Trade that is the subject of this action now pending before this or any other court of appeals.

(2)     The following actions are pending before the United States Court of International Trade and are likely to be affected by this Court's decision in this appeal: *Ildico Inc. v. United States*,  Court No. 18-00076 (Ct. Int'l Trade).

# <u>INTRODUCTION</u>

Watchmaking has been around since at least the sixteenth century.  At that time, small watch movements were "incorporated into a jewel or small precious object."  *Seventeenth-Century European Watches*, Metropolitan Museum of Art, https://www.metmuseum.org/essays/seventeenth-century-european-watches (last accessed June 13, 2025).  In the following century, "two varieties of watches were well established in western Europe: the watch that was primarily a piece of jewelry that incidentally told the time, and the watch that was primarily a source of information about the time of day, the day of the month, or even the phase of the moon."  *Id.*  Today's tariff schedule still reflects these two varieties of watches.  Heading 9101 of the Harmonized Tariff Schedule of the United States (HTSUS) covers wrist watches, pocket watches and other watches with a case of precious metal, while heading 9102 covers similar watches that do not have a case of precious metal.  For tariff purposes, precious metals are gold, silver, and platinum, but watches of heading 9101, like jewelry, can also be combined with pearls or precious stones.

To be covered by heading 9101, the tariff instructs that the watch case must be wholly of precious metal.  This means that the cases of these watches must be composed of precious metal, except for negligible or insignificant quantities of another material.  Plaintiff-appellant, Ildico Inc. (Ildico), argues that its imported luxury Richard Mille watches are classified in heading 9101 because they have cases consisting of three components made of 18 karat gold.  But the watches at issue

feature an exhibition case back made of synthetic sapphire crystal and titanium screws that fasten the gold components of the case. These components, which are not of precious metal, demonstrate that the Richard Mille watches do not have cases that are wholly of precious metal. Because the cases are composed of components that include titanium and synthetic sapphire crystal, the Richard Mille watches are properly classified in heading 9102, HTSUS. Accordingly, the trial court's judgment should be affirmed.

## STATEMENT OF THE ISSUE

Whether the imported wrist watches at issue are properly classifiable in heading 9101, HTSUS, as wrist watches with cases wholly of precious metal, or heading 9102, HTSUS, as wrist watches with cases of materials other than precious metal.

## STATEMENT OF THE CASE

This appeal involves the proper tariff classification of wrist watches imported by plaintiff-appellant, Ildico. U.S. Customs and Border Protection (CBP or Customs) liquidated the entries of watches in three subheadings: (1) subheading 9102.21.70,[1]

---

[1] Subheading 9101.21.70, HTSUS, provides for "wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or metal clad with precious metal: Other wrist watches, whether or not incorporating a stop watch facility: With automatic winding: Having over 17 jewels in the movement: Straps, bands or bracelets entered with watches of subheading 9101.21.50 and classifiable therewith pursuant to additional U.S. note 2 to this chapter; all of the foregoing whether or not attached to such watches at the time of entry: . . . Other."

HTSUS, with a duty rate of 4.2% *ad valorem* for the watch case, 9.8% *ad valorem* for the strap, band or bracelet, and $1.53 each for the watch movement; (2) subheading 9102.21.90, HTSUS, with a duty rate of rate of 4.2% *ad valorem* for the watch case, 2% *ad valorem* for the strap, band or bracelet and $1.53 each for the watch movement; and (3) subheading 9102.29.60, HTSUS, with a duty rate of 4.8% *ad valorem* for the watch case, 2.2% *ad valorem* for the strap, band or bracelet and $1.75 each for the watch movement. Ildico contends that the correct tariff classification of its watches is in heading 9101, HTSUS, duty free. The trial court upheld CBP's determination that the watches fall within heading 9102, HTSUS, and the trial court's decision should be affirmed.

## A. The Merchandise at Issue

At issue in this appeal are thirty-five (35) styles of Richard Mille wrist watches. Appx003. Each watch has three parts that are made of 18 karat gold, namely, the bezel, middle case, and back frame. Appx003. There is also a synthetic sapphire crystal on the front of the watch and a synthetic sapphire crystal case back on the back of each watch. Appx003. The front synthetic sapphire crystal sits above the watch dial and is secured to the top of the bezel with a plastic gasket. Appx003. The front crystal protects the watch from damage, as well as allowing the user to see the dial. The case back of synthetic sapphire sits on the back of the watch, secured by the back frame, revealing the movement and also protecting it from dirt, dust and moisture. Appx003. The synthetic sapphire case back occupies a significant portion

of the back of the watch and is necessary to complete the watch. A rubber o-ring gasket inside the middle case seals the bezel and middle case. Appx004. The watches also have titanium screws that fasten the bezel and back frame to the middle case, and rubber washer gaskets provide a cushion between the watch movement and middle case. Appx004. The watches have a winding stem that attaches to the movement of the case through an 18k gold crown tube mounted on the middle case for winding the watch's mainspring and to set the time. Appx004. Several of the styles at issue have 18k gold pushers (buttons) to serve a stopwatch timing function. Appx004.

The following is a representative image of the front and back of one of the models of the watches at issue:



Appx156, Appx158 (Model RM 011-S).

## B.    The Trial Court's Decision

The trial court issued *Ildico Inc. v. United States*, Slip Op. 24-00123 (Nov. 1, 2024) (Appx001-019), following the parties' cross-motions for summary judgment. In

deciding the motions, the trial court examined each of the competing tariff headings at issue, namely, heading 9101, HTSUS, which covers "[w]rist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal" and heading 9102, HTSUS which covers "[w]rist watches, pocket watches and other watches, including stop watches, other than those of heading 9101." The trial court held that the terms of heading 9101, HTSUS, do not describe the wrist watches at issue because they do not have cases "of precious metal." Appx008-014. The court stated that "a watch glass on the back of a watch is part of the case and renders the case not "wholly of" precious metal. Appx014.

In reaching its decision, the trial court first addressed whether the synthetic sapphire crystal back is part of the watch case. Appx008. Additional U.S. Note 1(b) sets forth the definition of "cases" for purposes of Chapter 91. Appx009. Headings 9101 and 9102, HTSUS, are contained within Chapter 91. According to the trial court, the classification of the watches turned on whether the sapphire crystal case backs are "a separate component of the watch, *i.e.,* watch glasses, or whether they are merely the back of the watches and therefore part of the watch cases, rendering the watch case not 'wholly of precious metal." Appx008.

The trial court initially noted that neither the HTSUS nor the Explanatory Notes define "watch glass." Appx010. Consequently, the trial court considered several lexicographic definitions of the term "watch glass," and held that the term "watch glass" refers generally to transparent materials protecting the watch's dial or

mechanism, whether placed on the front or back. Appx011-012. Because the crystal on the front of the watch and crystal on the back of the watch are functionally and materially the same, the trial court found that the synthetic sapphire back crystal satisfies the dictionary definition of a "watch glass." Appx012.

Nevertheless, the trial court reasoned that while the front glass is not part of the case—since requiring a precious metal front crystal would render the watch unreadable—the same logic does not apply to the back of the watch. Appx012-013. The trial court reasoned that the material of a component "is not the determining factor for whether a component is a part of the watch case." Appx013. The trial court stated that "[t]he fact that the backs of the watches are partly made of sapphire crystal does not mean that the sapphire crystal is no longer part of the back." *Id.* It means that the back of the watch is no longer "wholly of" precious metal. Appx014. As such, the trial court held that the synthetic sapphire case back is included in the case's composition when determining whether the case is "wholly of" precious metal. Accordingly, the trial court held that the watches do not meet the "wholly of" precious metal requirement of heading 9101, HTSUS, and are thus properly classified under heading 9102, HTSUS.

## SUMMARY OF THE ARGUMENT

The trial court's decision should be affirmed. As mentioned above, the tariff differentiates between two varieties of watches. Heading 9101, HTSUS, covers wrist watches, pocket watches and other watches with a case wholly of precious metal,

while heading 9102, HTSUS, covers such watches that do not have a case of precious metal.

The cases for Richard Mille watches are not composed completely of precious metal (gold, silver, or platinum) because they feature an exhibition case back made of sapphire crystal, which cover and protect the movement, and titanium screws that fasten the gold components of the case. The Richard Mille watches thus do not have cases that are wholly of precious metal because the cases are composed of components that include titanium and sapphire crystal. Accordingly, the trial court correctly classified the watches under heading 9102, HTSUS.

The thrust of Ildico's appeal rests on its argument that wristwatch cases only consists of a "bezel, body, and bottom." Because the watches at issue contain each of these components and, Ildico claims, they are all made from 18 karat gold, Ildico argues that the watches have cases "of precious metal," and are therefore classifiable in heading 9101, HTSUS. Ildico's classification analysis is predicated on a mélange of lexicons and Explanatory Notes. But the HTSUS already provides controlling statutory definitions for the terms "watches," "cases," "wholly of," and "precious metal." Therefore, any resort to dictionary definitions contrary to the statutory definitions is improper. As the trial court correctly held, the presence of the synthetic sapphire case back (along with the titanium screws) on the watch renders them ineligible for classification in heading 9101, HTSUS.

Furthermore, Ildico argues that the synthetic sapphire case backs are not a part of a watch case because that they are functionally and materially the same as the synthetic sapphire crystal on the front of the watch, which is not part of a watch case. As the trial court correctly recognized, Additional U.S. Note 1(b) provides a definition of the term "case" that does not impose any limitations on the material from which the component is made. The synthetic sapphire case back, located on the back of the watch, occupies a substantial portion of the back of the watch, serves a protective function, and is essential for the completion of the watch. Based on those structural and functional characteristics, the synthetic sapphire case back forms part of the watch case within the meaning of Additional U.S. Note 1(b). The watches at issue do not meet the requirement of having cases made wholly of precious metal and therefore are not classifiable in heading 9101, HTSUS. Accordingly, the watches are properly classified under heading 9102, HTSUS.

## ARGUMENT

## I. STANDARD OF REVIEW AND TARIFF CLASSIFICATION PRINCIPLES

This Court reviews a classification decision in two steps. First, the Court ascertains the meaning of the applicable tariff terms—a question of law that this Court reviews *de novo*. *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). The Court then assesses whether the trial court

correctly determined that a particular imported product falls within the tariff term at issue—a question of fact that this Court reviews for clear error. *Victoria's Secret Direct, LLC v. United States,* 769 F.3d 1102, 1106 (Fed. Cir. 2014).

In construing the HTSUS, the Court is bound to apply the General Rules of Interpretation (GRIs), which must be applied in numerical order. *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed. Cir. 2007). GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005). "The HTSUS is designed so that most classification questions can be answered by GRI 1." *Telebrands Corp. v. United States*, 865 F. Supp. 2d 1277, 1280 (Ct. Int'l Trade 2012), *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013). "What is clear from the legislative history of the World Customs Organization and case law is that GRI 1 is paramount . . . The HTSUS is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries[.]" *Id.*

GRI 6 governs the classification of merchandise within a subheading and requires the sequential reapplication of GRIs 1 through 5 to the particular subheadings under consideration. GRI 6 ("[C]lassification of goods in the subheading of a heading shall be determined according to the terms of those subheadings any related notes, mutatis mutandis, to the above rules.").

Courts may look to the Explanatory Notes (ENs) to the Harmonized Commodity Description and Coding System, maintained by the World Customs Organization, as persuasive authority on how to interpret and apply HTSUS provisions. *See Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1336 (Fed. Cir. 2007). Although the Explanatory Notes "do not constitute controlling legislative history," they "are intended to clarify the scope of HTSUS [provisions,] and to offer guidance in interpreting [those provisions]." *Mita Copystar America v. United States,* 21 F.3d 1079, 1082 (Fed. Cir. 1994); *see also Ciba Vision Corp. v. United States*, 36 Ct. Int'l Trade 1256 n.12 (2012) (adding that the Explanatory Notes "serve a critical function as an interpretative supplement to the HTSUS").

In this action, GRI 1 resolves the classification of the watches at issue, and therefore it is not necessary to resort to the remaining GRIs. The plain language of headings 9101 and 9102, HTSUS, the relevant legal notes, and the Explanatory Notes establish that the watches are properly classifiable in heading 9102, HTSUS.

## II.    THE TRIAL COURT CORRECTLY HELD THAT THE IMPORTED WRIST WATCHES ARE NOT CLASSIFIABLE IN HEADING 9101, HTSUS, BECAUSE THEY DO NOT HAVE "CASES" WHOLLY "OF PRECIOUS METAL."

The trial court correctly held that the imported watches do not meet the statutory requirements for classification in heading 9101, HTSUS. As noted by the trial court, the watches have cases made of 18 karat gold **and** synthetic sapphire, so they do not meet the criteria for having cases "wholly of precious metal." Note 2, Ch.

91, HTSUS.  As we show below, the trial court's holding is correct and should be affirmed.

### A. The HTSUS Headings and Legal Notes Exclusively Govern the Classification of the Imported Wrist Watches.

The first step in the classification analysis is the language of the headings. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013).  Here, the two competing HTSUS headings at issue are:

> 9101: Wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal:

> 9102: Wrist watches, pocket watches and other watches, including stop watches, other than those of heading 9101:

Note 2 to Chapter 91, HTSUS, further defines the headings as follows:

> Heading 9101 covers only watches with case *wholly* of precious metal or of metal clad with precious metal, *or* of the same materials combined with natural or cultured pearls, or precious or semiprecious stones (natural, synthetic or reconstructed) of headings 7101 to 7104. Watches with case of base metal inlaid with precious metal fall in heading 9102.

Note 2, Ch. 91, HTSUS (emphasis added).  Note 2 makes clear that the cases of the watches of heading 9101, HTSUS, fall into three categories:  (1) wholly of precious metal, or (2) of metal clad with precious metal, or (3) of the same materials combined with natural or cultured pearls, precious or semiprecious stones (natural, synthetic or reconstructed) of headings 7101 to 7104, HTSUS.  Watches with case of base metal inlaid with precious metal fall in heading 9102.

An *eo nomine* provision "describes an article by a specific name and, absent terms of limitation, includes all forms of the article." *See Carl Zeiss, Inc. v. United States,* 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citations omitted). Headings 9101 and 9102, HTSUS, are mutually exclusive *eo nomine* provisions. *See* heading 9102 (which codifies the carve out, watches "other than those of heading 9101"). If imported goods are classifiable in heading 9101, they cannot be classified in heading 9102. Thus, the threshold legal question is whether the imported watches are classifiable in heading 9101, HTSUS. As we show below, the trial court correctly held that the watches at issue are not classifiable in that heading.

"The first step in properly construing a tariff classification term is to determine whether Congress *clearly defined* that term in either the HTSUS or its legislative history." *Russell Stadelman & Co. v. United States,* 242 F.3d 1044, 1048 (Fed. Cir. 2001) (emphasis added); *Witex, U.S.A., Inc. v. United States,* 28 Ct. Int'l Trade 1907 (2004). The HTSUS provides definitions for all relevant terms at issue here, including the terms "watches," "cases," "precious metals" and the further limiting phrase "wholly of."

First, Additional U.S. Note 1(a) defines the term "watch" as follows:

> For the purposes of this Chapter:
>
> (a) The term "watches" embraces timepieces (including timepieces having special features, such as chronographs, calendar watches and watches designed for use in skin diving) of a kind for wearing or carrying on the person whether or not the

movement contained therein conforms to the definition of "watch movements" in note 3, above. Timepieces incorporating a stand, however simple, are not classifiable as watches.

Second, Additional U.S. Note 1(b) defines the term "cases" as follows:

For purposes of this Chapter:

(b)    The term "cases" "embraces inner and outer cases, containers and housings for movements, together with parts or pieces, such as, but not limited to rings, feet, posts, bases and outer frames, and any auxiliary or incidental features, which (with appropriate movements) serve to complete the watches, clocks, time switches and other apparatus provided for in this chapter."

By its express terms, Additional U.S. Note 1(b)'s definition of the term "cases" is unambiguous and broad.  Indeed, it covers "inner and outer cases, containers and housings for movements" as well as the "parts or pieces" and "any auxiliary or incidental features."  The definition is not limited to one particular time piece—rather it covers many, including "**watches**, clocks, time switches and other apparatuses provided for in this chapter."  AN1(b), Ch. 91, HTSUS (emphasis added).  Note 1(b) does not require a "case" or components of a case to be made of a specific material.

Third, the term "precious metals" in heading 9101, HTSUS, refers to "silver, gold and platinum."  Note 4(a), Ch. 71, HTSUS.[2]  The term "precious metals" may

---

[2] Chapter 71, HTSUS, covers "Natural or Cultured Pearls, Precious Or Semiprecious Stones, Precious Metals, Metal Clad with Precious Metal, and Articles Thereof; Imitation Jewelry; Coin."

also include alloys of silver, gold and platinum that meet certain requirements.  *See* Note 5,  Ch. 71, HTSUS.

Finally, the HTSUS in General Note 3(h)(v)(A) defines the term "wholly of" as follows:

> (h)   <u>Definitions</u>.  For the purpose of the tariff schedule, unless the context otherwise requires-
>
> (v)   the terms "wholly of", "in part of", and "containing", when used between the description of an article and a material (e.g., "woven fabrics, wholly of cotton"), have the following meanings:
>
> (A)   "wholly of" means that the goods are, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;
>
> *     *     *
>
> With regard to the application of the quantitative concepts above, it is intended that the *de minimis* rule apply

Although heading 9101 allows a precious metal case to be combined with a synthetic precious or semiprecious stone of heading 7101 to 7104, *see* Note 2, Ch. 91, HTSUS, the synthetic crystal backs do not fall into this category, as correctly analyzed by the trial court (AppxA009), and Idilco makes no argument to the otherwise.

As we show below, the language of heading 9101, the definitions of the terms "watches," "cases," "wholly of," and "precious metals," and relevant legal notes are all

that is needed for the classification of the subject watches. The trial court correctly interpreted and applied those statutory definitions and notes.

**B.     The Imported Wrist Watches Do Not Have "Cases" "Wholly Of Precious Metal"**

The second step in the classification analysis is to apply the HTSUS definitions and legal notes to the imported watches. The watches satisfy the statutory definition for "watches" as they are timepieces worn on the person and, specifically, they are "wrist watches" because they are "worn around the wrist." *See* wrist watches, *Merriam Webster Dictionary*, https://www.merriam-webster.com/dictionary/wristwatch (last accessed on June 13, 2025). Thus, the classification of the imported watches in heading 9101, HTSUS, turn on whether they satisfy the requirement for having "cases" "wholly of precious metal."

At least two different materials are used to manufacture the case components for the subject watches: 18 karat gold and synthetic sapphire crystal. The cases have a bezel, middle case, and back frame made of 18 karat gold, which is an alloy of gold, and thus a precious metal. All of those components fall within the Additional U.S. Note 1(b)'s references to "inner and outer cases, containers, and housings for movements" that "serve to complete the watch." Appx0156. However, the bezel, middle case, and back frame do not, by themselves, complete the cases of the imported watches as none of those components cover the back of the watch. Appx0158.

The backs of the watches at issue also include synthetic transparent sapphire case backs, which are part of the case, container, or housing for the movement and serve to complete the timepieces. Appx0158. A watch "case back" or "back" refers to "the back cover of a watch case, essentially the part that seals the rear of the watch and protects the internal movement from dust, moisture, and other external elements; it is the opposite side of the watch from the dial." Case Back, *Watch Components*, https://www.crownwatchblog.com/glossary/watch-components/C (last accessed June 13, 2025). An "exhibition" case back is a transparent or semitransparent case back that allows the wearer to view the watch's movement.[3] Exhibition Case Back, *Monochrome Watch Glossary*, https://monochrome-watches.com/glossary/exhibition-case-back/ (last accessed June 13, 2025). Here, the watches at issue feature an exhibition case back made of synthetic sapphire crystal, which, by that very definition, renders it part of a watch case.

The synthetic sapphire on the back of the watches at issue are part of the case under the HTSUS because it is part of the "outer case, container, or housing for the movement" and "serves to complete the watch." *See* AN1(b), Ch. 91, HTSUS. The synthetic sapphire crystal case back protects the movement from the elements (dirt, dust, and moisture). Appx210-211. The synthetic sapphire case back also

---

[3] It is also called a "display back" which is "[t]he case style of a pocket or wrist watch with a crystal mounted as the case back so the movement may be easily viewed." Appx423. *See also* entry for "exposition back." Appx423.

contributes to the watch's water resistance by preventing the entry of moisture into the case. Appx210-211. It covers a significant portion of the back of the watch. Appx158. As the only component on the back of the watch that protects (Bl. Br. at 4), the synthetic sapphire case back provides essential protection against environmental hazards, especially in light of being worn on the wrist, and the watch would not be complete without the synthetic sapphire case back. Appx158. The presence of the synthetic sapphire on the back of the watch precludes the imported watches from classification in heading 9101, HTSUS, because they do not have "cases" wholly "of precious metal."

## III.   ILDICO'S ARGUMENTS ARE WITHOUT MERIT

Ildico advances several arguments in favor of classifying the watches at issue in heading 9101, HTSUS. Each miss the mark.

### A.   Additional U.S. Note 1(b)'s Definition of the Term "Cases" Is Not Limited to Clock Cases

Ildico argues that the trial court erred when it held that the synthetic sapphire case back is part of the wrist watch "case." But that argument is belied by the plain language of Additional U.S. Note 1(b), which provides a statutory definition for the term "cases." Ildico does not dispute that the synthetic sapphire case back is covered by the language of that Note. Rather, Ildico argues that Note 1(b) is of "limited value" because "it's broad definition includes cases for clocks (and similar cases) of heading 9112 and other types of cases for time-keeping products materially different

than watches of headings 9101 or 9102." Blue Br. at 13. According to Ildico, Additional U.S. Note 1(b) only provides a definition for "clock cases." *Id.*

Relying on definitions of the term "cases" from lexicons, Ildico attempts to develop an alternative definition specifically for watch cases. Based on those definitions, Ildico concludes that the only parts of wrist watches that "house, contain, and structurally support the movement are the bezel, body, and bottom" and that those components are the "only three parts of a wrist watch case." Blue Br. at 13. Ildico's argument is predicated on a flawed statutory analysis.[4]

The Additional U.S. Notes included within the Chapter Notes are "legal notes that provide definitions or information on the scope of the pertinent provisions or set additional requirements for classification purposes." *Del Monte Corp. v. United States*, 730 F.3d 1352, 1355 (Fed. Cir. 2013). These Additional U.S. Notes are part of the legal text of the HTSUS, and are therefore "statutory provisions of law." *See* Preface at 1 n.2, HTSUS. *See also Del Monte Corp.*, 730 F.3d at 1355; *LF USA, Inc. v. United States*, 290 F. Supp. 3d 1339, 1343–44 (Ct. Int'l Trade 2017), *as amended* (Jan. 22, 2018). The prefatory language of Additional U.S. Note 1(b), "[f]or the purposes of this chapter," indicates that the Note applies wherever the term "cases" appears in

---

[4] Even under Ildico's flawed analysis, the synthetic sapphire crystal is part of the watch case. The synthetic sapphire crystal forms part of the case back, or "bottom," of the watches at issue. Ildico's references to the "bottom" is incomplete as it covers only the back frame of the case back and ignores the presence of the sapphire crystal on the back of the watch.

Chapter 91, which includes headings 9101 and 9102, HTSUS. Accordingly, the HTSUS definition of the term "cases" is controlling, and there is no need to resort to lexicographic resources to ascertain the meaning of that term.

Congress "is presumed to say in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013). If Congress intended for the definition of a case for a wrist watch to differ from a case for a clock, it would have done so explicitly in the HTSUS. Additional U.S. Note 1(b) speaks in general terms and explicitly applies to watches, clocks, and other devices in Chapter 91. *See* AN1(b) (referring to "watches, clocks, time switches and other apparatus provided for in this chapter"). The Note does not contain any language limiting "cases" for wrist watches to only three components, nor does it apply only to clock cases. Indeed, Note 1(b) articulates a broad and flexible definition that is capable of encompassing new and innovative designs. Given that Congress broadly defined the term "cases" in Additional U.S. Note 1(b) for purposes of Chapter 91, HTSUS, Ildico's limitation cannot be read into that definition nor can that definition be disregarded.

Furthermore, a foundational rule of statutory interpretation is that identical terms appearing within the same statute are presumed to have the same meaning. *See Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1147 (Fed. Cir. 2021). Ildico's contention that the term "cases" should be construed differently for wrist

watches than for clocks is inconsistent with this principle.  Additional U.S. Note 1(b)

ensures uniformity throughout Chapter 91 by providing a definition of "cases" that

applies across all headings within the chapter, including "watches, clocks, time

switches and other apparatus [as] provided for in this chapter."  The trial court

correctly interpreted and applied Additional U.S. Note 1(b) to the watches at issue.

> ## B. The Explanatory Notes Do Not Establish that a Wrist watch "Case" Excludes the Synthetic Sapphire Case Backs on the Subject Watches

Ildico departs from the terms of heading 9101, HTSUS, by instead relying on a

patchwork of Explanatory Notes in an attempt to show that Additional U.S. Note

1(b) does not apply to wrist watch cases.  Ildico argues that the Explanatory Notes

"restrict" the meaning of "wrist watch cases" and make clear that the only parts of a

wrist watch are the bezel, body, and bottom.  Blue Br. 13-16.  The Explanatory Notes,

however, undermine Ildico's position.

It is well-established that Explanatory Notes cannot narrow or limit the scope

of a tariff heading.  *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1288 (Fed. Cir.

2008).  However, this is precisely what Ildico is attempting to do.  Ildico first cites to

the Explanatory Note to Chapter 91, which states that a clock or a watch consists of

"two main parts:  the movement and the container for the movement (case, cabinet,

etc.). . . The assembled movement together with the dial and hands, is fitted in the

container or case."  Blue Br. at 14.  This language does not provide any support for

Ildico's position that a watch case is limited to a bezel, body, and bottom as the Note

only references one component of the watch case: the "container for the movement." The bezel, body, and bottom, along with any other parts of the case, are parts of the "container for the movement." The Explanatory Note to Chapter 91 is thus entirely consistent with Additional U.S. Note 1(b).

Moreover, the Explanatory Note's purpose is to provide guidance for classifying imported watches, in a finished state, in headings 9101 and 9102, HTSUS. The import of the Note is that if the movement and housing for the movement are present at importation, the watches are eligible for classification in headings 9101 or 9102, HTSUS. *See* EN to Ch. 91, HTSUS ("The assembled movement, together with the dial and hands, is fitted in the container or case."). The Note does not define or limit the specific components or elements encompassed by the term "cases." Nor does it identify any specific components of a wristwatch case—even those that Ildico claims are the only components of a watch case. *See id.* (identifying the components of a movement, but not of a container or case).

Ildico next compares the Explanatory Note to heading 9111, HTSUS ("Watches cases and parts thereof"), with the Explanatory Note to heading 9112, HTSUS ("Clock cases and cases of a similar type for other goods of [Chapter 91], and parts thereof"), arguing that those Explanatory Notes establish that the broad

definition of "cases" in Note 1(b) only applies to clock cases.[5]  According to Ildico, the trial court failed to distinguish "the competing language in the Explanatory Notes for headings 9111 and 9112" that "restrict the meaning of wrist watches to only three select structural parts: bezel, body, and bottom."  Blue Br. at 16.

According to Ildico, the Explanatory Note to 9111, HTSUS, "lists only three parts that are found in a wristwatch of either 9101 or 9102: (1) "bezels"; (2) "case body"; and (3) "bottom."  Blue Br. at 15.  Ildico misreads the Explanatory Note.  As a preliminary point, Explanatory Notes are merely guidance and cannot modify, limit, or supplant the unambiguous language of a statutory definition.  And the trial court accorded the proper weight to the Explanatory Notes.

Nevertheless, the Explanatory Note to heading 9111, HTSUS, identifies (at least) five parts of a watch (1) the case body, (2) the pendant, (3) the dome, (4) the bezel, and (5) the bottom.  The Explanatory Note further specifies that the bottom "closes the watch on the opposite side from glass" and indicates that "ordinary watches have only one[.]"  Explanatory Note to heading 9111, HTSUS.  The

---

[5] In footnote 6 of its brief, Ildico points to CBP's Informed Compliance Publication (ICP), *Classification and Marking of Watches and Clocks* (Feb. 2012) to establish that "Additional Note 1(b) applies only to the additional parts of "clock cases," not "watch cases."  Ildico is incorrect.  The ICP references Additional U.S. Note 1(b) in the context of marking requirements, noting that outer cases of clocks must be marked.  Nothing in the ICP suggests that the definition of "case" in Note 1(b) is limited to clocks or provides a more limited definition of "case."  Moreover, pursuant to GRI 1, the language of the HTSUS provisions and the relevant legal notes control the classification of the imported watches.  Thus, CBP's publication does not have any legal significance in determining the correct classification.

Explanatory Note then specifies that cases for wrist-watches do not have pendants, but have lugs, or claws, that are also parts of wrist-watch cases. *Id.* "Lugs" are "the attachment elements that secure the strap or a bracelet to the watch case. In the vast majority of cases, they are an integral part of the case and made from the same material." Horopedia, https://horopedia.org/lugs/ (last accessed June 13, 2025). *See also* Appx424.

The Explanatory Note also states that "[w]rist-watch cases often consist of two parts" with the body and bottom combined. It also notes that such wrist watches can have protective domes, which cover the watch movement. "Domes" are defined as follows:

> In a wristwatch case, it also doubles as a dust cover, commonly called a *cassolette* in French, which also acts as a shock absorber. In some watches, the dome is fitted with a glass and serves as a protective cover. *A polished gold dust cover.*

*See* Dictionary of Horology, https://dictionary.fhs.swiss/?l=en (last accessed on June 13, 2025).

While the Explanatory Note to heading 9111, HTSUS, does not provide an exhaustive list of parts of watch cases, it clarifies that the parts of a wrist watch case **are not** limited to the bezel, body, and bottom. Critically, it defines the bottom (or back) as the part which "closes the watch on the opposite side from the glass." This is precisely the function of the synthetic sapphire case back on the watches at issue. Moreover, the Explanatory Note specifically states that the heading covers cases for

watches "with or without glasses, presented without movements" and emphasizes that "[w]atch cases and parts thereof may be of any material."

Next, Ildico argues that the Explanatory Notes to heading 9112, HTSUS, establish that the definition of a clock case is broader than the definition of a watch case because that Note identifies many other structural parts of clock cases that are not found on wrist watches of headings 9101 and 9102, HTSUS. Blue Br. at 15-16. Like the Explanatory Notes to heading 9111, HTSUS, the Explanatory Notes to 9112, HTSUS, do not provide an exhaustive list of parts of clock cases and cannot modify or limit Additional U.S. Note 1(b).

### C.     The Synthetic Sapphire Case Back Is Part of a Wrist Watch Case

Ildico argues that Note 1(a) to Chapter 91 excludes "watch glass" from any provision in Chapter 91, including heading 9111 ("Watch cases and parts thereof"). *See* Note 1(a), Ch. 91, HTSUS. Based on this exclusion, Ildico argues that, because the synthetic sapphire case back is "watch glass," it cannot be classified in heading 9111 as "part" of a watch case. Therefore, the synthetic sapphire is not part of the case of the imported watches. To bolster its argument, Ildico relies on the Explanatory Note to heading 9111, HTSUS, and argues that the Note states that "watch glasses" are excluded from the meaning of a "heading 9101 watch case." Blue Br. at 17. Ildico contends that only the bezel, body, and bottom, which are made of 18k gold, constitute the watch case. Ildico is incorrect.

It is well-established that merchandise is classified based on its condition at the time of importation.  *Ford Motor Co. v. United States*, 926 F.3d 741, 752 (Fed. Cir. 2019) (citing *United States v. Citroen*, 223 U.S. 407, 414–15 (1912)).  The watches at issue were imported in a finished state.  The synthetic sapphire case back did not enter the United States separately from the watch; so its individual classification under the HTSUS is irrelevant.  Moreover, the term "watch glass" is a tariff term that suggests that it covers **actual glass**.  Heading 7015, HTSUS, "Clock or **watch glasses** and similar glasses, glasses for non-corrective or corrective spectacles, curved, bent, hollowed or the like; not optically worked; hollow glass spheres and their segments, for the manufacture of such glasses."  (emphasis added).  "Watch glass" is made of glass and designed to protect the watch dial or face.  *See* Explanatory Note to heading 9111 (stating that the bezel is the part "which holds the glass" and that bottom covers "the opposite side from the glass," suggesting that the glass covers the dial, not the movement).  Indeed, the Explanatory Notes to heading 7015, HTSUS, state that:

This heading covers:

(A)     **Glass,** curved, bent, hollowed or the like, of any shape or size, with or without parallel faces, used as clock or watch glasses; it also includes all similar glasses for photograph frames and the like, medallions, hygrometers, barometers and similar appliances. **In other words the heading covers a range of glasses of types normally designed to protect the dials or faces of the articles in question, . . .**

(emphasis added).  The synthetic sapphire case back is not glass and is not designed to protect the dial or face—both of which are on the front of the watch.

The trial court held that the synthetic sapphire case back satisfies the lexicographic definitions of "watch glass," but "a watch glass on the back of a watch is part of the case and renders the case not 'wholly of precious metal.'" Appx014.  Although the trial court found that the synthetic sapphire case back satisfied the dictionary definition of "watch glass," the trial court held that "cases" for watches are not limited to a specific material and thus the synthetic sapphire is part of the case. Appx013 ("[T]he fact that the backs of the watches are partly made of sapphire crystal does not mean that the sapphire crystal is no longer part of the back.").  The trial court's analysis correctly focused on the structural location of the synthetic sapphire case back and its function rather than its composition or descriptive label. This view also comports with the Explanatory Note to Heading 9101, which provides that "watches with case of precious metal or of metal clad with precious metal, **having a steel back**, fall in heading 91.02[.]"  EN 91.01 (emphasis added). The Explanatory Note's example of a watch having a steel back both confirms that there are functional watches on the market with precious metal backs (classified in heading 9101) and demonstrates the principle that the back, regardless of the material, is considered in determining whether a case is wholly of precious metal under heading 9101, HTSUS, and Additional U.S. Note 1(b).  Because the synthetic

sapphire case back is on the back of the watch, it is covered by the definition of "case" in Additional U.S. Note 1(b).

Ildico argues that the trial court's holding would produce an absurd result. Namely, if "watch glass" for the front of the watch is imported separately, it is classified outside of Chapter 91 but if virtually identical "watch glass" is the case back on an imported watch, the glass would be considered part of a watch case classifiable in Chapter 91. Ildico's "absurd result" speculation is unfounded. The classification of separately imported articles or parts involves a different analysis as compared to the classification of watches that are complete upon importation. Separately imported "watch glass," might be classified in heading 7015, HTSUS, as "watch glass." *See* Note 1(a), Ch. 91, HTSUS (stating that clock or watch glasses or weights are classified "according to their consistent material."). There is nothing absurd about that resulting classification.

The HTSUS has specific rules regarding how to classify certain parts or components including rules where separately imported parts are not classified as a part of a specific good. Here, Note 1 provides guidance on how to classify merchandise when entered as separate articles of commerce, and not definitions of what constitutes a watch or a watch case. *Contrast* Note 1, Ch. 91, HTSUS *with* AN1, Ch. 91, HTSUS.

**D. The Classification of the Individual Components of the Watches Is Immaterial Because the Watches Are Classifiable in their Condition as Imported as Fully Assembled Goods.**

The trial court concluded that it was unnecessary to reach the issue of whether the screws constituted part of the case within the meaning of Additional U.S. Note 1(b) having already concluded that the synthetic sapphire case back itself qualifies as part of the case under Note 1(b). Appx015. Nevertheless, Ildico advances several arguments based on the hypothetical notion of the titanium screws, washers, and "other parts" being imported separately. Despite Additional U.S. Note 1(b), Ildico argues that those articles should not be considered as parts of a case for a watch. Blue Br. at 22. Ildico speculates that if the screws and washers had been imported separately, they would be classified as "parts of general use" in subheading 7318, HTSUS, and not as parts of a watch case. Blue Brief at 22. Under Ildico's theory, if the screws and washers are not parts of a watch case, they are not relevant to the classification of the imported watches. Ildico's "parts of general use" argument is incorrect.

Ildico's arguments pertaining to the importation of individual components of the watches are hypothetical and without support. The titanium screws and copper-nickel-zinc washers were not imported separately. Therefore, the tariff classification of the individual parts of the watch, including the titanium screws and washers, like the watch glass, has no bearing on the classification of the subject watches in their condition as imported. The only fact that is relevant to classification under heading

9101, HTSUS, is the constituent material of the screws and washers as they must be "wholly of precious metal" to be classified under heading 9101. *See* Note 2. Given that the titanium screws and washers do not satisfy the "wholly of precious metal" requirement and are embraced by the term "cases" of Note 1(b), the imported watches cannot fall within heading 9101, HTSUS.

## IV. THE WATCHES AT ISSUE ARE PROPERLY CLASSIFIABLE IN HEADING 9102, HTSUS.

Heading 9102, HTSUS, covers "[w]rist watches, pocket watches and other watches, including stop watches, other than those of heading 9101." We have established that the imported merchandise qualify as wrist watches and that they cannot be classified in heading 9101, HTSUS. Therefore, they are properly classifiable in heading 9102, HTSUS. Specifically, the watches are classifiable in subheadings 9102.21.70, 9102.21.90, and 9102.29.60, HTSUS. *See* GRI 6. Accordingly, the trial court's judgment should be confirmed.

## <u>CONCLUSION</u>

For these reasons, the Court should affirm the trial court's judgment.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH
Trial Attorney

Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-1873
Attorneys for Defendant-Appellant

DATED:  June 13, 2025

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FRAP 32(a)(7)(C)

_____
                                                          :
ILDICO INC.,                                              :
                                                          :
      Plaintiff-Appellant,          :     Appeal No. 2025-1337
                                                          :
        v.                   :
                                                          :
UNITED STATES,                                            :
                                                          :
      Defendant-Appellee.           :
_____                 :

     I, MARCELLA POWELL, a Senior Trial Counsel in the Office of the

Assistant Attorney General, Civil Division, Commercial Litigation Branch,

International Trade Field Office, who is responsible for the foregoing brief, relying

upon the Microsoft Word Count feature of the word processing program used to

prepare the brief, certify that this brief complies with the type-volume limitation

under Rule 32(a)(7)(B) and contains 7,376 words.


                   /s/ Marcella Powell
                   Marcella Powell